**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| JUSTIN E. FAIRFAX,<br><br>        Plaintiff,<br><br>        v.<br><br>CBS CORPORATION and CBS BROADCASTING INC.,<br><br>        Defendants. | Case No. 1:19-cv-01176-AJT-MSN |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS</u>**

Jay Ward Brown, Va. Bar No. 34355
Matthew E. Kelley, Va. Bar No. 84045
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
Phone: 202-661-2200
Fax: 202-661-2299
kelleym@ballardspahr.com
brownjay@ballardspahr.com

*Counsel for Defendants CBS Corporation
and CBS Broadcasting Inc.*

Defendants CBS Broadcasting Inc. and CBS Corporation (together, "CBS") respectfully submit this memorandum in support of their Motion for Attorneys' Fees and Costs.

## I. INTRODUCTION

Plaintiff Justin Fairfax ("Fairfax") filed the original complaint in this action on September 12, 2019, Dkt. 1, and his Amended Complaint ("Am. Comp.") on October 3, 2019, Dkt. 9. The Amended Complaint purports to state causes of action for defamation (Count One) and intentional infliction of emotional distress (Count Two), both based on CBS's broadcasts of *CBS This Morning* co-host Gayle King's interviews with two women who accuse Fairfax of sexual assault, Vanessa Tyson and Meredith Watson. Am. Comp. ¶¶ 210-28. Although these allegations were reported upon by print and television media outlets across the country, Fairfax has sued only CBS, seeking compensatory damages of $400 million, punitive damages, and an injunction against publishing any material determined to be defamatory. *Id*. at 56 (prayer for relief).

As CBS set forth in its Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Mot. to Dismiss"), the Court should dismiss Fairfax's Amended Complaint because, among other reasons, Fairfax has not, and cannot, adequately plead "actual malice" with respect to CBS's broadcast of interviews with Tyson and Watson. *See* Mot. to Dismiss at 22-37. If the Court grants CBS's motion in this respect, the broadcasts at issue necessarily also are immune from liability under Virginia's anti-SLAPP statute, which provides immunity from claims for defamation to those exercising their right to speak on matters of public concern so long as the statements are not "made with actual or constructive knowledge that they are false or with reckless disregard for whether they are false." Va. Code § 8.01-223.2(A) (2017); *see also* Mot. to Dismiss at 37-38. Where the immunity statute applies, the Court is authorized to

award to the successful defendant its attorneys' fees. Va. Code § 8.01-223.2(B).

As CBS establishes below, based on the allegations of his Amended Complaint and public statements he has made regarding those allegations and this action, Fairfax's pleading is best understood as an attempt to leverage a $400 million lawsuit against CBS to advance his own personal political interests by discrediting both the women who accused him of sexual assault and his political rivals, and to hinder the news media's investigation of these allegations, rather than to actually seek redress for any harm to his reputation purportedly caused by CBS. This makes an award to CBS of its reasonable attorneys' fees especially appropriate in this case.[1]

I.  **FAIRFAX CANNOT MEET HIS BURDEN TO PROVE THAT THE IMMUNITY STATUTE DOES NOT APPLY TO HIS CLAIMS**

Because the immunity statute is relatively new, there is no controlling interpretation of it from either the Virginia Supreme Court or the Fourth Circuit. However, by its plain terms, the statute requires that, when a plaintiff asserts a defamation claim based on a publicly disseminated news report about a matter of public concern, to overcome the immunity it confers, the plaintiff (regardless of his status as a public figure or a private one) must plead and prove actual malice. *Compare New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) (defining "actual malice" as publishing with "knowledge that [the publication] was false or with reckless disregard of whether it was false or not"), *with* Va. Code § 8.01-223.2(A) (immunity applies unless

---

[1] While the Court need not conclude that Fairfax acted with an improper motive in filing this lawsuit in order to determine that CBS is entitled to a fee award, *see Doe v. Burke*, 133 A.3d, 569, 575 (D.C. 2016) (discussing District of Columbia's nearly identical fee provision), the Court may consider evidence of such motive in determining that, in this case, an award of fees is especially appropriate, *Arnold v. Burger King Corp.*, 719 F.2d 63, 66 (4th Cir. 1983) (plaintiff's motivation "may shed light on the degree of frivolousness"). Accordingly, CBS has attached as exhibits to this application certain documents the Court may consider on the present motion demonstrating Fairfax's ongoing promotion of his Amended Complaint and his allegations that Tyson and Watson are part of a "political hit job" and conspiracy to thwart his political career.

statements were "made with actual or constructive knowledge that they are false or with reckless disregard for whether they are false").

For the reasons set forth in CBS's Motion to Dismiss, Fairfax has failed plausibly to allege that CBS disseminated the challenged broadcasts with actual malice. *See* Mot. to Dismiss at 22-37. Because he has failed to "nudge [his] claims across the line from conceivable to plausible," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Mot. to Dismiss at 15-17, Fairfax has similarly failed to meet his burden of adequately pleading that the immunity statute does not preclude his claims. CBS therefore is entitled to recover its reasonable attorneys' fees and costs, Va. Code § 8.01-223.2(B), and, as CBS establishes below, such an award is especially appropriate in this case.

## II. THE COURT SHOULD AWARD TO CBS ITS REASONABLE ATTORNEYS' FEES AND COSTS

Because there is no Virginia case law explaining when courts should exercise their discretion to award attorneys' fees and costs to a defendant who succeeds in having a defamation claim dismissed pursuant to Section 8.01-223.2, this Court may look to the guidance of courts in other jurisdictions that have grappled with this question. As courts in states with similar speech-protective statutes have noted, the award of attorneys' fees is intended to deter "chilling" of speech on matters of public interest, s*ee Metabolife Int'l., Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1221 (S.D. Cal. 2002), and to discourage future SLAPP litigation, *see Clifford v. Trump*, 2018 U.S. Dist. LEXIS 211297, at *17-18 (C.D. Cal. Dec. 11, 2018). *See also, e.g.*, *Barry v. State Bar of Cal.*, 386 P.3d 788, 794 (Cal. 2017) (fee-shifting provision is meant to "compensat[e] the prevailing defendant for the undue burden of defending against litigation designed to chill the exercise of free speech rights"); *Nexus Grp., Inc. v. Heritage Appraisal Serv.*, 942 N.E.2d 119, 124 (Ind. Ct. App. 2011) (statute, including fee-shifting provision, "is intended to reduce the

4

number of lawsuits brought primarily to chill the valid exercise of the constitutional right[] of freedom of speech," and to "fully compensate[]" defendants sued for "lawfully exercis[ing] [their] First Amendment rights" (citations omitted)).

The District of Columbia's anti-SLAPP statute has a fee-shifting provision similar to the one contained in Virginia's statute, providing that a "court may award a moving party who prevails, in whole or in part . . . the costs of litigation, including reasonable attorney fees." D.C. Code §-16-5504(a). Although the language appears to be permissive, the District of Columbia Court of Appeals has held that fee awards should be presumed, and movants are *not* required to show either "improper motive (bad faith) or total lack of merit in the underlying suit" to obtain a fee award. *Burke*, 133 A.3d at 575. Given the similarity of the statutes both in wording and intent, this Court should interpret Virginia's immunity statute as presumptively providing for the award of attorneys' fees and costs in the event it grants the accompanying Motion to Dismiss.

Even if a fee award is not presumed, however, this Court should nevertheless award to CBS its fees. In cases involving federal fee-shifting statutes, courts have held that a plaintiff's ulterior motive in suing is relevant to determining a fee award, even absent indications of bad faith. For example, the Supreme Court has held in a Title VII case that a fee award is justified "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421 (1978); *see also Arnold*, 719 F.2d at 66 (while "the motivation factor is not a prerequisite to the award of attorneys' fees to the defendant, it may shed light on the degree of frivolousness."). The Fourth Circuit came to a similar conclusion regarding a Section 1983 claim in *Hutchinson v. Staton*, 994 F.2d 1076 (4th Cir. 1993). There, the court held that the district court had conducted a proper three-step

5

analysis in awarding attorneys' fees to the defendant by determining: (1) the plaintiff's claim was based on "conjecture and speculation" and "had no basis in fact," (2) the plaintiff was motivated by "revenge in bringing the suit," which was expensive for defendants to litigate, and (3) defendant's fee request was reasonable. *Id*. at 1080. As the court noted, "[w]hen a court imposes fees on a plaintiff who pressed a 'frivolous' claim, it chills nothing that is worth encouraging." *Id*. at 1081.

This Court should award to CBS its reasonable fees and costs in defending this lawsuit because it is precisely the kind of litigation the Virginia statute targets: an attempt by a powerful public official to punish criticism and deter others from airing allegations of misconduct against him. Indeed, as CBS demonstrates below, this is particularly so of this lawsuit, given the other uses Fairfax has made of his pleading.

### III. FAIRFAX'S AMENDED COMPLAINT, AND HIS EFFORTS TO PROMOTE THE ALLEGATIONS IN IT, DEMONSTRATE AN INTENT TO FURTHER HIS OWN POLITICAL AGENDA AND TO CHILL FREE SPEECH

Fairfax has not merely failed to state a claim against CBS in his Amended Complaint. Rather, he uses that privileged pleading to allege several "facts" that are (i) demonstrably false; (ii) irrelevant to making out a claim against CBS, but which attack both the two woman who accused him of assault (neither of whom are named as defendants) and his political opponents; or (iii) both of these things. In addition, he has premised his lawsuit largely on CBS's alleged failure to report on an "eyewitness," the existence of whom he failed to disclose to CBS (or anyone else) until several months *after* the broadcasts at issue (and whom he still has not identified), which his own Amended Complaint characterizes (albeit in a broadside directed at one of his accusers) as a "lie[] by omission." Am. Comp. ¶ 93.

6

**Amended Complaint – Demonstrably False Allegations**

Fairfax's Amended Complaint includes multiple allegations that are demonstrably false:

- Fairfax alleges that CBS failed to investigate leads, including "some provided directly to CBS by Fairfax's team prior to the stories being aired on the network," Am. Comp. ¶¶ 8, 112, 123, 136. As text messages reproduced in the Amended Complaint itself between CBS Reporter Ed O'Keefe and Fairfax's spokeswoman make clear, however, CBS *did* attempt to reach the sources provided by Fairfax, but none responded, and O'Keefe specifically asked the spokeswoman to encourage the sources to respond to CBS. *Id.* ¶ 107. Further, CBS, in fact, asked to interview Fairfax, and he *declined* their request for an interview. Second Declaration of Matthew E. Kelley ("2d Kelley Decl.") Ex. A.

- Fairfax alleges that Watson's attorney, Nancy Erika Smith, "is unwilling to address whether there was a third person present during Watson's alleged rape by Fairfax." Am. Comp. ¶¶ 155-58, 186. In fact, Smith issued a public statement soon after Fairfax first suggested there was an eyewitness, saying: "Five months after being accused of rape, Justin Fairfax changes his story yet again. First it didn't happen, then it was consensual, and now for the first time he implicates his buddy as a participant. . . . If Justin Fairfax wants the truth to come out, this secret witness should testify under oath, in public, along with Mr. Fairfax, both his victims and their witnesses. . . . Fairfax continues to fight a public hearing tooth and nail. That says it all." 2d Kelley Decl. Ex. B (news report quoting statement).

- Fairfax alleges that CBS failed to report on his June 12 call for criminal investigations into Tyson's and Watson's allegations. Am. Comp. ¶¶ 182, 185. CBS did, in fact, report his call for a criminal investigation the very next day. 2d Kelley Decl. Ex. C (copy of report). In fact, CNN credited CBS with being the *first* news organization to report this development. *Id.* Ex. D.

- Fairfax alleges that his demand letter to CBS was "merely" a request "for CBS to take its objective reporting role seriously," Am. Comp. ¶ 127, but the letter in fact demanded that CBS "cease and desist from publishing Ms. Watson's interview and defamatory statements . . . [,] issue an official on-air apology and retraction of its publication of Ms. Watson's allegations, remove any and all content publishing those allegations across all of CBS's media platforms and outlets, and *broadcast the fact that Ms. Watson's allegations are false* with the same vigor and reach with which CBS has published and promoted those false allegations to tens of millions of viewers." 2d Kelley Decl. Ex. E (emphasis added). The letter also demanded that CBS pay Fairfax $300 million. *Id.*

- Fairfax alleges in his Amended Complaint that *The Washington Post* investigated Tyson's claims in 2017 and 2018 and decided not to publish her account because it could not corroborate her story. Am. Comp. ¶¶ 61, 167-68. In his first public statement regarding the allegations, Fairfax said the *Post* found "significant red

7

flags and inconsistencies within the allegation." *See* 2d Kelley Decl. Ex. F. Further, Fairfax told journalists that he showed the *Post* "ample evidence of the inconsistencies," regarding Tyson's story, and that "the *Post* didn't believe her." 2d Kelley Decl. Ex. G at 7:43-9:53. However, Karen Tumulty, National Politics Columnist for the *Post*, told CBS in an interview that Fairfax's initial statement regarding the *Post* was false. *Id.* Ex. H at 1:28-1:55. Further, in his Amended Complaint, *id.* ¶ 61, he omits the article's similar refutation of having found any "red flags" and selectively quotes from the paper's explanation about why it did not initially publish Tyson's allegations. *Id.* Ex. I (full copy of the article).

**Amended Complaint – Fairfax's Accusations Against Tyson, Watson and His Political Opponents**

Fairfax's Amended Complaint also includes multiple accusations directed at Tyson, Watson and his political opponents that, regardless of their truth or falsity, have little or nothing to do with his claims against CBS:

- Regarding Tyson, Fairfax alleges that her "fabrications against Fairfax were politically-motivated," that she "instigated and fostered a deliberate plan to defame Fairfax on the same weekend that scandal broke that led to calls for Governor Northam's resignation," and that, "[a]fter failing in her late-2017 effort to harm Fairfax's political career, Tyson picked a second politically-opportune time to air her false allegations." Am. Comp. ¶¶ 4, 80-82.

- Regarding Richmond Mayor Levar Stoney, Fairfax alleges that "Stoney, who publicly expressed interest in running for Lieutenant Governor in Virginia in 2017 and Governor of Virginia in 2021, views Fairfax as a political rival who has been positioned to delay Stoney's desired run for Governor." *Id.* ¶ 64.

- Regarding Stoney, Thad Williamson, who is a candidate for Richmond City Council, and Williamson's wife, Adria Scharf, Fairfax alleges that he "had indeed been warned in the fall of 2018 that should [he] announce his intention to run for Governor in 2021, Stoney, Williamson, and Scharf intended to promote a supposedly damaging, uncorroborated accusation against [him] involving Tyson in an attempt to harm [him] personally and professionally and to derail his political future." *Id.* ¶ 64.

- Regarding Stoney and former Virginia Governor Terry McAuliffe, Fairfax alleges that "[b]oth Stoney and McAuliffe are rumored to be potential candidates for Virginia Governor in 2021 and thus have reasons to attempt to thwart Fairfax's political career. Upon information and belief, McAuliffe was the first major elected official in Virginia to call for Fairfax's resignation as Lt. Governor." *Id.* ¶ 65.

- Regarding Watson, Fairfax alleges that her "motive also appears politically-

motivated in that she sought to air her false allegation in the Virginia General Assembly and continues to avoid any independent law enforcement investigation of her claim." *Id.* ¶ 6.

- Regarding both Tyson and Watson, Fairfax alleges "[E]ach woman's account was false and motivated by political and personal animus against Fairfax." *Id.* ¶ 137.

**Fairfax's Public Statements Regarding His Amended Complaint**

Fairfax's public statements immediately after he filed the Amended Complaint demonstrate that he has employed it as a vehicle to advance his personal political interests by attacking his accusers and political rivals. Fairfax has cited the Amended Complaint's allegations as "exonerating evidence" as he has disparaged persons wholly unrelated to CBS. In each of the statements below, Fairfax referenced his Amended Complaint, or linked to stories and interviews that discuss the Amended Complaint. These statements include:

- October 3: Lauren Burke, Fairfax's spokeswoman, issued a statement reading, in relevant part: "The Amended Complaint exposes the behind-the-scenes coordination between Fairfax's political rivals, namely Richmond, Virginia, Mayor Levar Stoney's former aide Thad Williamson, Williamson's wife Adria Scharf, and Vanessa Tyson, who claimed Fairfax had assaulted her fifteen years ago. . . . These allegations reveal that these political foes of Fairfax desperately attempted to stop him from ascending to the Governorship of Virginia in the immediate aftermath of a photo scandal that led to calls for the resignation of Governor Ralph Northam beginning on February 1, 2019." 2d Kelley Decl. Ex. J (news article quoting statement).

- October 3: Fairfax gave an interview to WRIC-TV in Richmond about his Amended Complaint, claiming Tyson's accusations were a "political hit job" and that it "is not difficult to connect the[] dots" to people who would benefit from the allegations, continuing that "it really shows the level of plotting, the behind the scenes coordination." He also warned that "we certainly have not taken further litigation off the table," against others named in the complaint, and said that unspecified "people really should be held accountable." 2d Kelley Decl. Ex. K.

- October 3: Fairfax retweeted a tweet from WRIC-TV reporting on his Amended Complaint: "@LGJustinFairfax claims political rivals, including @LevarStoney, were involved in the release of sexual assault allegations made by one of his accusers in order to 'derail his political future.'" 2d Kelley Decl. Ex. L.

- October 3: Fairfax retweeted a tweet from WRIC reporter Amy Simpson: "BREAKING: Just spoke with @LGJustinFairfax about the amended defamation

lawsuit filed today against CBS. Fairfax says one of the sex assault accusations against him was a 'political hit job' involving Richmond's Mayor @LevarStoney. I'll break down tonight on @8NEWS[.]" 2d Kelley Decl. Ex. M.

- October 4: Fairfax tweeted a link to a segment from the *Gary Flowers Show*, where participants discussed his Amended Complaint and asked "why the Virginia Democratic Party has shunned Lt. Gov. Justin Fairfax, even though nothing has been proven . . ." and captions the tweet: "Must Listen! In the #Next400years, Virginia will help put an end to the vicious, negative politics of personal destruction and false allegations. The truth has brought about a lot of silence. We will lead the way forward. #Truth #WeRiseTogether." 2d Kelley Decl. Ex. N.

- October 15: Fairfax gave an interview to the online talk show *Roland Martin Unfiltered* during which he discussed his Amended Complaint and said, in part, "we know today these stories were fabricated and politically motivated," and that he has "proof positive" that the allegations are part of a "smear campaign." 2d Kelley Decl. Ex. O.

- October 15: Fairfax retweeted Roland Martin: "Virginia Lt. Gov. @FairfaxJustin joins us on #RolandMartinUnfiltered to discuss the battle he is fighting against sexual assault allegations and the $400M suit he filed against CBS. . . ." 2d Kelley Decl. Ex. P.

- October 15: Fairfax retweeted Roland Martin's promotion of the interview in which Fairfax talked about his lawsuit: "RIGHT NOW on #RolandMartinUnfiltered, VA Lt. Gov. @FairfaxJustin addresses the sex assault allegations made against him. Says he was never close to resigning because the claims are false . . ." 2d Kelley Decl. Ex. Q.

- October 16: Fairfax tweeted a link to the Roland Martin interview, and captioned it: "Game Over! Proof positive that it was a politically-motivated smear campaign of defamatory false & fabricated allegations. The accusers & those who rushed to judgement and called for my resignation with no evidence or #dueprocess are now radio silent." 2d Kelley Decl. Ex. R.

- October 27: Fairfax posted a series of six tweets linking to his Amended Complaint with the message: "Since the exonerating evidence re: Ms. Watson's false allegation went public neither @nancyerikasmith nor her client has vouched for the truth of her allegation. (pgs. 38-39 of the lawsuit . . .)[.]" In these tweets, Fairfax tagged many different journalists and news outlets, including @jaketapper, @donlemon, @chucktodd, @JaneMayerNYer, @washingtonpost, @WashTimes, @virginianpilot, @nytimes, @npr, @wamu885, @WashTimes, @rolandsmartin, @TheRoot@byTheresaVargas, @CapehartJ, @JoeNBC, @morningmika, @TheView, @BlackPressUSA, @wusa9, and @ABC. These tweets were retweeted a collective 18 times as of October 29. 2d Kelley Decl. Ex. S.

- <u>October 28</u>: Fairfax posted a series of 21 tweets, linking to his interview on Roland Martin Unfiltered with the caption: "Since exonerating evidence re: Ms. Watson's false allegations went public neither @nancyerikasmith nor her client has vouched for the truth of her allegation. (pgs. 38-39 of the lawsuit)." In his tweets, Fairfax tagged an even larger group of journalists, news organizations and others, with additions including @NewYorker, @AP, @NAACP, @NAACP_LDF, @vademocrats, @KamalaHarris, @CoryBooker, @ewarren, @LevarStoney, @ThadWilliamson, @SenGillibrand, @amyklobuchar, @TheRevAl, @DPVAChair, @LVozzella, @GovernorWilder, @kojoshow, @HeatherNBC12, @NBC12, @DukeU, @DukeSanford, @newsobserver, @DukeChronicle, @ACLU, @ACLUVA, @innocence, @CornellWBrooks, @IyanlaVanzant, @JillFilipovic, @Femsplainers, @JamilSmith, and @RollingStone. These tweets were retweeted a collective 55 times as of October 29. 2d Kelley Decl. Ex. T.

**The "Eyewitness"**

Beyond using his Amended Complaint as a vehicle to discredit his political opponents and the women who have accused him of sexual assault, Fairfax bases his pleading on a manufactured theory of actual malice for which—even if it is otherwise credited—he, and he alone, is responsible. As explained in some detail in the Memorandum accompanying CBS's Motion to Dismiss, Fairfax's legal theory is premised on his assertion that CBS failed to interview or otherwise report the existence of an "eyewitness" who would have exonerated him of one of the sexual assaults of which he stands accused. He even characterizes his accuser's failure to disclose this crucial information to CBS as a "lie[] by omission." Am. Comp. ¶ 93. Yet, despite CBS's conceded multiple interactions prior to the broadcasts with that spokesperson, and CBS's multiple requests that Fairfax himself sit for an interview of his own, neither Fairfax nor anyone acting on his behalf *ever* suggested to CBS (or to anyone else for that matter) that such an "eyewitness" existed until months *after* the challenged broadcasts—and Fairfax has still not ever identified the person. In equity, such conduct would be characterized as "unclean hands." For purposes of the Virginia statute's provisions concerning attorneys' fees, such gamesmanship ought to tip the balance decisively in favor of an award of fees.

11

## **CONCLUSION**

This Court, upon granting the accompanying Motion to Dismiss, should award to CBS its reasonable attorneys' fees and costs in defending this action in an amount to be determined at a later date.

Dated: November 1, 2019

Respectfully submitted,

BALLARD SPAHR LLP

By */s/ Matthew E. Kelley*
   Jay Ward Brown, Va. Bar No. 34355
   Matthew E. Kelley, Va. Bar No. 84045
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
Phone: 202-661-2200
Fax: 202-661-2299
brownjay@ballardspahr.com
kelleym@ballardspahr.com

*Counsel for Defendants CBS Corporation and CBS Broadcasting Inc.*

## CERTIFICATE OF SERVICE

I certify that on November 1, 2019, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all interested parties.

 /s/ Matthew E. Kelley
Matthew E. Kelley, Va. Bar No. 84045
Ballard Spahr LLP
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
Phone: 202-661-2200
Fax: 202-661-2299
kelleym@ballardspahr.com

*Counsel for Defendants CBS Corporation and CBS Broadcasting Inc.*