**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |
|---|---|
| **JUSTIN E. FAIRFAX,**<br><br>              **Plaintiff,**<br><br>       **v.**<br><br>**CBS CORPORATION and CBS BROADCASTING INC.,**<br><br>              **Defendants.** | Case No. 1:19-cv-01176-AJT-MSN |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Lee Levine (*pro hac vice*)
Jay Ward Brown, Va. Bar No. 34355
Matthew E. Kelley, Va. Bar No. 84045
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
Phone: 202-661-2200
Fax: 202-661-2299
levinel@ballardspahr.com
brownjay@ballardspahr.com
kelleym@ballardspahr.com

*Counsel for Defendants CBS Corporation
and CBS Broadcasting Inc.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... ii

I.   FAIRFAX IS UNABLE TO ESTABLISH THAT THE BROADCASTS
     REASONABLY CONVEY A DEFAMATORY MEANING ............................................1

     A.   Fairfax Cannot Show The Broadcasts Are Defamatory Of Him ............................1

     B.   CBS Did Not Invoke The Neutral Reportage Doctrine And It Is
          Irrelevant To Whether Fairfax Has Pleaded An Actionable
          Defamatory Meaning .............................................................................................5

II.  FAIRFAX HAS FAILED PLAUSIBLY TO PLEAD ACTUAL MALICE ......................6

     A.   *Iqbal/Twombly* Require That, To Defeat CBS's Motion, Fairfax
          Plausibly Plead That CBS Broadcast The Reports With Actual Malice ................7

     B.   Fairfax Has Failed Plausibly To Plead Actual Malice, Whether His
          Allegations Are Viewed Individually Or Collectively ...........................................8

          1.   CBS's purported journalistic failings.........................................................10

          2.   CBS's purported "public relations motive" and "preconceived
               narrative".................................................................................................14

          3.   CBS's post-publication conduct ................................................................15

III. THE NEWS REPORTS AND RELATED MATERIALS CBS HAS
     PLACED IN THE RECORD PROPERLY ARE SUBJECT TO JUDICIAL
     NOTICE....................................................................................................................16

IV.  FAIRFAX HAS FAILED TO STATE A CLAIM FOR IIED ...........................................18

V.   CBS CORPORATION IS NOT A PROPER DEFENDANT...........................................20

CONCLUSION.....................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                              **Page(s)**

*Advanfort Co. v. Int'l Registries, Inc.*,
   No. 1:15-cv-220, 2015 WL 2238076 (E.D. Va. May 12, 2015)............................................17

*Arpaio v. Cottle*,
   No. 18-cv-02387 (APM), 2019 U.S. Dist. LEXIS 134604 (D.D.C. Aug. 9,
   2019)............................................................................................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................7, 8, 14, 19

*Barry v. Time, Inc.*,
   584 F. Supp. 1110 (N.D. Cal. 1984) ..........................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................7, 8, 10, 14

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015)...........................................................................................8, 10

*Biro v. Condé Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013)..........................................................................15, 16

*Chapin v. Knight-Ridder, Inc.*,
   993 F.2d 1087 (4th Cir. 1993) ...............................................................................2, 3, 4, 6

*Cianci v. New Times Publ'g Co.*,
   639 F.2d 54 (2d Cir. 1980)........................................................................................................6

*Condit v. Dunne*,
   317 F. Supp. 2d 344 (S.D.N.Y. 2004)......................................................................................18

*Corinthian Mortgage Corp. v. ChoicePoint Precision*,
   No. 1:07cv832 (JCC), 2008 WL 11374386 (E.D. Va. April 4, 2008)....................................17

*Croce v. N.Y. Times Co.*,
   930 F.3d 787 (6th Cir. 2019) .....................................................................................................6

*Edwards v. Schwartz*,
   378 F. Supp. 3d 468 (W.D. Va. 2019) ..............................................................................13, 14

*Eure v. Norfolk Shipbuilding & Drydock Corp.*,
   263 Va. 624, 561 S.E.2d 663 (2002)........................................................................................20

*Fairbanks v. Roller*,
   314 F. Supp. 3d 85 (D.D.C. 2018) ...........................................................................................18

*Fields v. Sprint Corp.*,
 No. 3:16cv905 (MHL), 2017 U.S. Dist. LEXIS 147654 (E.D. Va. May 11,
 2017) ................................................................................................................19, 20

*Fuller v. Aliff*,
 990 F. Supp. 2d 576 (E.D. Va. 2013) ...........................................................18, 19

*Garrison v. Louisiana*,
 379 U.S. 64 (1964)..................................................................................................8

*Glob. Relief Found., Inc. v. N.Y. Times Co.*,
 390 F.3d 973 (7th Cir. 2004) .................................................................................6

*Hanks v. Wavy Broad., LLC*,
 No. 2:11cv439, 2012 U.S. Dist. LEXIS 15729 (E.D. Va. Feb. 7, 2012) ..................4

*Harte-Hanks Cmmc'ns, Inc. v. Connaughton*,
 491 U.S. 657 (1989)..............................................................................................14

*Hatfill v. N.Y. Times*,
 416 F.3d 320 (4th Cir. 2005) .................................................................................8

*Hatfill v. N.Y. Times Co.*,
 488 F. Supp. 2d 522 (E.D. Va. 2007) ...................................................................10

*Hugger v. Rutherford Inst.*,
 94 F. App'x 162 (4th Cir. 2004) .....................................................................12, 13

*Jackson v. Hartig*,
 274 Va. 219, 645 S.E.2d 303 (2007).....................................................................10

*Jankovic v. Int'l Crisis Group*,
 72 F. Supp. 3d 284 (D.D.C. 2014)........................................................................10

*Mayfield v. NASCAR*,
 674 F.3d 369 (4th Cir. 2012) .................................................................................7

*McCaffrey v. Va. Peninsula Reg'l Jail Auth.*,
 No. 4:18cv154, 2019 U.S. Dist. LEXIS 185262 (E.D. Va. Oct. 4, 2019) .............19

*McFarlane v. Sheridan Square Press*,
 91 F.3d 1501 (D.C. Cir. 1996) ...............................................................10, 15, 16

*Michel v. NYP Holdings, Inc.*,
 816 F.3d 686 (11th Cir. 2016) ..........................................................................7, 8

*N.Y. Times Co. v. Connor*,
 365 F.2d 567 (5th Cir. 1966) ...........................................................................15, 16

*N.Y. Times Co. v. Sullivan,*
  376 U.S. 254 (1964) ............................................................................13, 15

*Pendleton v. Newsome,*
  290 Va. 162, 772 S.E.2d 759 (2015) ...............................................................2

*Pippen v. NBCUniversal Media, LLC,*
  734 F.3d 610 (7th Cir. 2013) ...........................................................8, 15, 16

*Reuber v. Food Chem. News, Inc.,*
  925 F.2d 703 (4th Cir. 1991) .............................................................6, 9, 10

*Richmond Newspapers v. Lipscomb,*
  234 Va. 277, 362 S.E.2d 32 (1987) ...............................................................10

*Schaecher v. Bouffault,*
  290 Va. 83, 772 S.E.2d 589 (2015) .................................................................1

*Schatz v. Republican State Leadership Comm.,*
  669 F.3d 50 (1st Cir. 2012) ..............................................................................8

*Semida v. Ride,*
  863 F.2d 1156 (4th Cir. 1988) ......................................................................15

*Tavoulareas v. Piro,*
  763 F.2d 1472 (D.C. Cir. 1985) .......................................................................9

*Tavoulareas v. Piro,*
  817 F.2d 762 (D.C. Cir. 1987) ..............................................9, 13, 14, 15, 16

*Time, Inc. v. Pape,*
  401 U.S. 279 (1971) ..........................................................................................6

*Turner v. Wells,*
  879 F.3d 1254 (11th Cir. 2018) .......................................................................8

*Webb v. Virginian-Pilot Media Co.,*
  287 Va. 84, 752 S.E.2d 808 (2014) ..............................................................4, 5

*Wells v. Liddy,*
  186 F.3d 505 (4th Cir. 1999) ....................................................................10, 11

*Zaklit v. Glob. Linguist Sols., LLC,*
  No. 1:14cv314, 2014 U.S. Dist. LEXIS 92623 (E.D. Va. July 8, 2014) ..............19

**Statutes & Other Authorities**

Fed. Rule Civ. P. 9(b) .........................................................................................7

Va. Code § 8.01-223.2 ..................................................................................................................16

## I.   FAIRFAX IS UNABLE TO ESTABLISH THAT THE BROADCASTS REASONABLY CONVEY A DEFAMATORY MEANING

In its opening Memorandum, CBS demonstrated that, under settled principles for assessing whether a plaintiff has properly pleaded an actionably defamatory statement, the broadcasts at issue would not be understood by reasonable viewers as a conclusion *by CBS* that Fairfax is guilty of sexual assault.   That is so because, considered in full and in the context of the already highly publicized allegations, the broadcasts report both the allegations by the two women that their consensual encounters with Fairfax eventually became non-consensual sexual assaults, and Fairfax's detailed denials that those sexual acts were forced.   *See* Mem. Supp. Mot. Dism. ("Mem.") at 17-22 (Dkt. 17).   In his Opposition, Fairfax does not bother to respond to CBS's argument, instead setting up several strawmen that he then knocks down, offering a new but equally flawed theory of liability (defamation by implication) he did not plead, and mischaracterizing both the content of the challenged broadcasts and applicable law.

### A.   Fairfax Cannot Show The Broadcasts Are Defamatory Of Him

As CBS explained in its opening Memorandum, a court making the required threshold legal determination of whether a challenged publication is reasonably understood as defamatory must consider the publication in full and in context.   *Schaecher v. Bouffault*, 290 Va. 83, 93-94, 101, 772 S.E.2d 589, 595, 599 (2015).[1]   In making this determination, Virginia courts apply the common-sense principle that, because reasonable people understand that accusations of

---

[1] Copies of the broadcasts are before the Court, and CBS respectfully urges the Court to review them for itself rather than rely on any party's characterizations of them.   It is telling in this regard that Fairfax not only failed to attach copies of the challenged broadcasts to his pleading, but also expressly opposed providing the Court with recordings of them.   Dkt. 22 at 2; *see Hanks v. Wavy Broad., LLC*, No. 2:11cv439, 2012 U.S. Dist. LEXIS 15729, at *8 n.2 (E.D. Va. Feb. 7, 2012) (finding it "noteworthy" in defamation action that "Plaintiff did not provide the Court with the entire publication and subsequently objected to Defendants' attempt to provide the Court with it").

wrongdoing are inevitable in political discourse, accounts that provide both sides do not defame any particular participant in a public controversy.  Mem. at 18-19 (citing cases).

In his Opposition, Fairfax sidesteps this principle, repeating instead his conclusory assertion that the broadcasts are "defamatory *per se*" because the two women accuse him of what he characterizes as the crimes of rape or assault.  Mem. Opp. Mot. Dism. ("Opp.) at 4 (Dkt. 35).  But that misses the point.  It is well settled that the Court must consider the women's statements both within the framework of the broadcasts as a whole and in the larger context in which they were disseminated to determine what meaning a reasonable viewer would attribute to them.

Perhaps recognizing that his argument that the broadcasts constitute defamation *per se* is a *non sequitur*, Fairfax then pivots, contending for the first time that the broadcasts defame him by implication.  *Id.* at 4-7.  But even if the Court were otherwise inclined to permit amendment of a pleading via a brief, it is clear from the face of the broadcasts that Fairfax could not properly plead this theory.  In particular, the Fourth Circuit has squarely held that, under the First Amendment, even if a publication about a public figure on a matter of public concern reasonably can be construed to convey a defamatory implication, it is not actionable unless, on its face, it also "affirmatively suggest[s] that the author intends or endorses the inference."  *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93 (4th Cir. 1993).  Fairfax cannot make that showing.

Instead, Fairfax purports to rely on the Virginia Supreme Court's decision in *Pendleton v. Newsome*, 290 Va. 162, 772 S.E.2d 759 (2015), which he describes as holding that allegations explaining the circumstances that give rise to the alleged defamatory implication "will suffice to survive [a motion to dismiss]."  Opp. at 4-5.  But Fairfax omits the remainder of that sentence: "if the court, in the exercise of its gatekeeping function, deems the alleged meaning to be defamatory."  *Pendleton*, 290 Va. at 172, 772 S.E.2d at 763.

2

Under *Chapin*, when serving its gatekeeping function, the first question the Court must address is whether Fairfax has identified any defamatory implication reasonably conveyed by the broadcasts.  Fairfax asserts that he has properly pleaded several circumstances that render the broadcasts defamatory by implication: that King told viewers some details of the allegations were "disturbing;" that neither she nor her co-anchors questioned the veracity of his accusers' statements; that the co-anchors made statements that could be construed as vouching for his accusers' credibility, including one's spontaneous impression that the sexual conduct described by one of the women "feels like it was forced;" and that King "failed to probe inconsistencies in Tyson's story."  Opp. at 6.  But each of these assertions either misrepresents the actual content of the broadcasts, is insufficient reasonably to imply that Fairfax is in fact guilty, or both.

First, it is self-evident that many people would be "disturbed" by Tyson's and Watson's descriptions of conduct they say became sexual assaults, regardless of whether those accusations are true or false.  Calling the allegations "disturbing" is a description of their *content*, not their *veracity*.  Second, contrary to Fairfax's false characterization of the broadcasts, it is evident on the face of the reports that King *did* challenge Tyson and Watson about details of their stories and raise issues about their credibility.[2]  Third, with regard to the statements by King's co-anchors that Fairfax characterizes as "erroneous factual statements" vouching for Tyson's and

---

[2] *See* Mem. at 20 n.6; *see also* Kelley Decl. Ex. 4 at 5-6 (King questioning Tyson regarding her claim she did not contact Fairfax after their encounter); *id.* at 7 (King stating that Fairfax asserts Tyson did contact him afterward); *id.* Ex. 6 at 2 (King asking Tyson to respond to Fairfax's assertion that "this is an orchestrated smear campaign against him"); *id.* Ex. 11 at 3 (King stating to Watson that Fairfax says "that this night is consensual"); *id.* at 4 (King: "I think people looking at you would say well, how could it happen to her twice in the same place at the same school.  What do you say to that?"); *id.* at 6 (King: "As for Watson's claim that she had been assaulted by a Duke basketball player, the university also said this in February, that it first learned of that allegation when it appeared in the press that month[.]"); *id.* Ex. 13 (King observing that the situation begs the question why the accuser is more credible than the accused).

Watson's credibility, *id.*, the Court can judge for itself, but CBS respectfully submits that a reasonable viewer would understand them to be in-the-moment responses to the obvious pain that the women express in their interviews – pain that Fairfax himself in his public statements has repeatedly acknowledged and has urged the public and the media to respect. *See* Kelley Decl. Ex. 6 at 2; *see also* Mem. at 21. Moreover, the co-anchors' statements must be considered in their full context: as brief, subjective "commentary," Am. Compl. ¶ 12, included in the broadcasts alongside Fairfax's insistent and detailed denials as well as repeated statements *by CBS* that the women's accusations are just that, not established facts.[3]

Thus, not only is Fairfax unable to satisfy the first prong of the *Chapin* test for defamation by implication – that the broadcasts reasonably convey to readers the implication that he is in fact guilty of the crimes of rape and assault – he also is unable to satisfy the second prong of that test: that the broadcasts on their face demonstrate that CBS intended or endorsed such an implication. It defies common sense to maintain that a reasonable person would believe CBS endorsed the conclusion that Fairfax was guilty of the crime of rape in news broadcasts that prominently, repeatedly and extensively presented his vigorous denials of the accusations and consistently referred to the allegations as allegations rather than as established fact.

This point is well illustrated by a case on which Fairfax relies, *Webb v. Virginian-Pilot Media Co.*, 287 Va. 84, 752 S.E.2d 808 (2014). *See* Opp. at 6-7. The plaintiff in *Webb* was an assistant principal whose son – a student at a different school in the same district – was involved

---

[3] *See* Mem at 21 n.7; *see also, e.g.*, Kelley Decl. Ex. 11 at 1 (King referring at beginning of broadcast to Watson and Tyson as "the women who *accuse* Virginia's lieutenant governor of sexual assault" and explaining, "[n]ow, *he denies their assault allegations* adamantly") (emphasis added); *id.* Ex. 13 at 1 (King beginning broadcast by referring to Watson "telling the *story* she revealed after . . . Tyson publicly *alleged* that . . . Fairfax sexually assaulted her . . . Watson *claims* that Fairfax raped her in 2000 when they were both students at Duke . . . Justin Fairfax *denies their allegations*, adamantly so." (emphasis added)).

in a fight with another student.  *Webb*, 287 Va. at 86-87, 752 S.E.2d at 809-10.  A newspaper article about the incident contrasted the school's discipline of the two students, noting that the assistant principal's son, who had been charged with a felony and convicted of a misdemeanor, was allowed to remain at school and graduate, while the other student dropped out after being required to transfer to another school.  *Id.*  The Virginia Supreme Court acknowledged that some readers could infer from the article the false and defamatory implication that the assistant principal had intervened to obtain special treatment for his son and, indeed, several witnesses had testified at trial that they drew that inference.  *Id.*, 287 Va. at 90-91, 752 S.E.2d at 812.  The court held, however, that the case should have been dismissed at the pleading stage because that inference was not *reasonable* – including because the article "disclaimed" the defamatory meaning by quoting a school spokesperson as denying that the assistant principal had intervened or that officials were lenient with the son out of sympathy to the father.  *Id.*

The same is true here.  Some viewers may have come away from the broadcasts believing that Fairfax had assaulted Tyson and Watson.  But they would not believe that CBS itself had endorsed that view, particularly given the prominence the reports gave to Fairfax's denials.  The broadcasts, therefore, are not actionable.  As the Virginia Supreme Court said in *Webb*, "[e]nsuring that defamation suits proceed only upon statements which actually may defame a plaintiff, rather than those which merely may inflame a jury to an award of damages, is an essential gatekeeping function of the court."  287 Va. at 90, 752 S.E.2d at 811.

## B.  CBS Did Not Invoke The Neutral Reportage Doctrine And It Is Irrelevant To Whether Fairfax Has Pleaded An Actionable Defamatory Meaning

Setting up another strawman, Fairfax contends that CBS "attempt[s] to rely on the neutral reportage doctrine to avoid liability."  Opp. at 7.  But the Court will search CBS's memorandum in vain for any reference to that doctrine.  Indeed, CBS did not assert the First Amendment-based

"neutral reportage" doctrine as a ground for dismissal precisely because, as explained both in its

opening memorandum and in the preceding sections of this reply, the broadcasts are not

actionable under Virginia common law because they cannot reasonably be held to communicate

the proffered defamatory meaning.  The cases on which CBS has in fact relied have taken pains

to emphasize precisely that—there is no need to resort to the First Amendment generally, and the

neutral reportage doctrine specifically, when a defamation claim is foreclosed at common law.

*See, e.g.*, *Croce v. N.Y. Times Co.*, 930 F.3d 787, 796-97 (6th Cir. 2019); *Glob. Relief Found.,*

*Inc. v. N.Y. Times Co.*, 390 F.3d 973, 980, 987 (7th Cir. 2004).[4]

## II.     FAIRFAX HAS FAILED PLAUSIBLY TO PLEAD ACTUAL MALICE

While Fairfax's defamation claim should be dismissed because the broadcasts are not

reasonably understood in the defamatory sense he alleges, he similarly fails in his Opposition to

overcome CBS's second ground for dismissal:  Fairfax cannot point to any facts he pleaded or

that he could plead that would plausibly suggest CBS broadcast the reports at issue with actual

---

[4] In those jurisdictions that have recognized it, there is general agreement that the doctrine protects the reporting of allegations against a public official or public figure that are newsworthy because they are made, so long as the report is neutral and does not "espouse or concur" in the allegation.  *See* Opp. at 7-8; *Chapin*, 993 F.2d at 1097; *Barry v. Time, Inc.*, 584 F. Supp. 1110, 1125-27 (N.D. Cal. 1984).  Here, if the Court were to conclude that the broadcasts do reasonably communicate the alleged defamatory meaning, the First Amendment, as reflected in the neutral reportage doctrine, would nevertheless preclude Fairfax's claim. As he acknowledges, Opp. at 7-8, neither the Fourth Circuit nor the U.S. Supreme Court has adopted the doctrine, although both have endorsed its doctrinal underpinnings.  *See Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 717 (4th Cir. 1991); *Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971).  If this Court were to apply the doctrine, it would be obliged to dismiss Fairfax's defamation claim because the broadcasts involved already-public allegations of serious misconduct against the second-ranking elected official in the Commonwealth that had already prompted calls for his resignation and potential impeachment proceedings, and the broadcasts balanced those allegations with Fairfax's denials.  The case on which Fairfax primarily relies, *Cianci v. New Times Publ'g Co.*, 639 F.2d 54 (2d Cir. 1980), illustrates why this doctrine would shield CBS:  There, the article at issue was not neutral because, among other things, it "made no mention of Cianci's claim of innocence of the charge of rape" and the article did not otherwise include plaintiff's version of the facts.  *Id.* at 69.  The opposite is true of the CBS broadcasts, which provided his side of the story in detail.

malice—*i.e.*, knowing or believing it likely the statements at issue were false.  Here, too, Fairfax relies on strawmen to deflect attention from this fundamental pleading failure.  First, he contends that his pleading is not subject to a heightened pleading standard, Opp. at 10, rebutting an argument that CBS has not made.  Second, Fairfax protests that actual malice can be proven by the accumulation of circumstantial evidence, *id.* at 11, a contention that CBS's memorandum expressly recognizes.  Once these strawmen are set aside, Fairfax is left without any factual allegations that plausibly could support this element of his defamation claim.

### A. *Iqbal/Twombly* Require That, To Defeat CBS's Motion, Fairfax Plausibly Plead That CBS Broadcast The Reports With Actual Malice

Fairfax first asserts that CBS has improperly suggested that actual malice is subject "to a special pleading standard."  *Id.* at 10.  In fact, however, CBS has relied exclusively on the *Iqbal/Twombly* pleading standard that applies to all civil actions in federal court.  *See* Mem. at 15-17, 22-23.  Under that standard, Fairfax must plead sufficient factual allegations to "state a claim for relief that is plausible on its face."  *See id.* at 15-16 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Actual malice is a state of mind that, under Rule 9(b), may be pleaded "generally," but as the Fourth Circuit has expressly held, allegations of actual malice must nevertheless satisfy the *Iqbal/Twombly* requirement and therefore must be supported by well-pleaded facts that give rise to a plausible claim for relief.  *Mayfield v. NASCAR*, 674 F.3d 369, 377 (4th Cir. 2012) (affirming dismissal where defamation plaintiff failed to plead facts plausibly suggesting actual malice); *see also Iqbal*, 556 U.S. at 686-87 (that state of mind may be pleaded "generally" under Rule 9(b) is a "relative term" distinguishing state-of-mind pleading, which remains subject to the general rules of pleading, from Rule 9(b)'s requirement that fraud and mistake be pleaded with particularity).  The Fourth Circuit is by no means an outlier in this regard:  "[E]very circuit that

7

has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).[5] Thus, as a public official, Fairfax must plead facts that plausibly show CBS subjectively believed at the time of the broadcasts that they were false or, at a minimum, that CBS disseminated them despite having a "high degree of awareness of their probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).

In his Opposition, Fairfax fails to cite either *Iqbal* or *Twombly*. Instead, he relies on a Fourth Circuit case that was decided before (and effectively overruled by) those two watershed U.S. Supreme Court decisions. Opp. at 10 (citing *Hatfill v. N.Y. Times*, 416 F.3d 320, 329-30 (4th Cir. 2005)). Simply put, *Iqbal* and *Twombly* govern this case and, in their wake, Fairfax is obliged to allege specific facts that, if proven, would support a finding of actual malice.

### B. Fairfax Has Failed To Plausibly Plead Actual Malice, Whether His Allegations Are Viewed Individually Or Collectively

Here as well, Fairfax premises his argument on a strawman, claiming that CBS has contended that actual malice cannot be shown by an accumulation of circumstantial evidence. *See* Opp. at 11-16. Again, such a contention is nowhere contained in CBS's memorandum. What CBS has argued is that Fairfax cannot transform a legally insufficient claim into a plausible one merely by pleading a collection of conclusory allegations—each individual allegation must *itself* be both legally relevant as proof of actual malice and properly pleaded and, *collectively*, must plausibly make out a claim of actual malice. *See* Mem. at 30.

---

[5] *See also Turner v. Wells*, 879 F.3d 1254, 1273-74 (11th Cir. 2018) (affirming dismissal for failure to plausibly plead actual malice); *Biro v. Condé Nast*, 807 F.3d 541, 546-47 (2d Cir. 2015) (same); *Pippen v. NBCUniversal Media*, 734 F.3d 610, 614-15 (7th Cir. 2013) (same); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56-58 (1st Cir. 2012) (same).

In this regard, Fairfax cites repeatedly to an opinion by a panel of the D.C. Circuit denying a petition for rehearing that was *superseded* by a decision of the full court sitting *en banc*.  Opp. at 12, 15, 22, 23 (citing *Tavoulareas v. Piro*, 763 F.2d 1472 (D.C. Cir. 1985) (subsequent history omitted)).  Whatever may have been the view of that panel on these issues, the *en banc* D.C. Circuit held otherwise, establishing in that case that, although "a plaintiff may prove the defendant's subjective state of mind through the cumulation of circumstantial evidence . . . . actual malice does not automatically become a question for the jury whenever the plaintiff introduces pieces of circumstantial evidence tending to show that the defendant published in bad faith." *Tavoulareas v. Piro*, 817 F.2d 762, 789 (D.C. Cir. 1987).  Thus, while the *en banc* court in *Tavoulareas* acknowledged plaintiff's evidence that (1) defendants relied on a single, allegedly unreliable source; (2) there was personal animus between the source and plaintiff; (3) defendants did not retract the article; (4) an editor doubted a central contention of the article; (5) defendants faced pressure to produce "sensationalistic stories" and (6) failed to investigate the accusations against plaintiffs fully, *id.* at 790-98, it concluded that, even considering these various indicia of actual malice in the aggregate, the plaintiffs had failed to demonstrate the requisite knowledge of probable falsity, *id.* at 794 n.43.

Other courts have reached the same result.  For example, the Fourth Circuit in *Reuber* found insufficient to support a jury finding of actual malice evidence of (1) ill will, (2) failure to consider whether the source had a "strong incentive to harm" plaintiff's professional reputation, (3) the publication's profit motive, (4) the defendant's lack of inquiry into the truthfulness of the allegations, (5) an admission by the reporter that she would have published the information "even if she had known some of the allegations were false," and (6) the suggestion that two

passages in the document relied on by the reporter contradicted each other.  925 F.2d at 715-18.[6]

Fairfax alleges that CBS engaged in numerous categories of conduct that he claims

demonstrate it broadcast the challenged reports with the requisite knowledge of their probable

falsity.  Opp. at 15-24.  But, as CBS explained in its opening Memorandum, whether viewed

individually or collectively, these allegations are not sufficient to "nudge[] [his] claims across the

line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

### 1.  CBS's purported journalistic failings

Fairfax alleges variously that CBS "failed to adequately investigate; failed to seek

corroboration from the most obvious sources; purposely avoided learning the truth of the matter;

relied on sole, unreliable sources" and "departed from basic journalistic standards," and that

these purported failings combine to form a plausible claim of actual malice.  Opp. at 15.  Indeed,

he argues that CBS's alleged breach of a "duty to investigate" is one of the "more significant

indicia" of actual malice.  *Id.* at 16.  But, as a threshold matter of well-established constitutional

law, a duty to investigate is not triggered unless the journalist has *obvious* reason to doubt a

source.  *See Hatfill v. N.Y. Times Co.*, 488 F. Supp. 2d 522, 531 (E.D. Va. 2007), *aff'd*, 532 F.3d

312 (4th Cir. 2008); *Jackson v. Hartig*, 274 Va. 219, 229-30, 645 S.E.2d 303, 309 (2007).

Fairfax asserts that CBS assumed a duty to investigate because, he contends, Tyson and

Watson were unreliable sources.  To support this contention, Fairfax cites *Wells v. Liddy*, 186

---

[6] *See also Richmond Newspapers v. Lipscomb*, 234 Va. 277, 289-95, 362 S.E.2d 32, 38-42
(1987) (reversing jury finding of actual malice after considering, both individually and
collectively, evidence of such indicia as (1) ill will, (2) predetermination of facts, (3) omission of
favorable information, (4) doubts about truth of story from other newspaper staff, and
(6) threatening and intimidating behavior by reporter against plaintiff); *Biro*, 807 F.3d at 543,
546-47 (same and affirming dismissal for failure to plead actual malice); *Jankovic v. Int'l Crisis
Grp.*, 72 F. Supp. 3d 284, 309-17 (D.D.C. 2014) (same and affirming summary judgment for
defendant on actual malice), *aff'd*, 822 F.3d 576 (D.C. Cir. 2016); *McFarlane v. Sheridan
Square Press*, 91 F.3d 1501, 1510-14 (D.C. Cir. 1996) (same).

F.3d 505, 542 (4th Cir. 1999). *See* Opp. at 18. But the sole source in *Wells* was a disbarred

attorney and convicted felon who had a history of substance abuse and mental illness and who

had changed his story several times and, as a result, the journalist in *Wells* had "been advised by

counsel that he should not rely on [the] sole source for any information because [the source] had

difficulty differentiating between reality and nonreality." *Wells*, 186 F.3d at 543. Suffice to say,

even as alleged by Fairfax, the "facts" regarding Tyson and Watson and their purported

"unreliability" bear no resemblance to those at issue in *Wells*.

At bottom, Fairfax has not pleaded any facts that would establish that CBS had any

reason to doubt (much less "obvious" reason to doubt), and therefore a duty to investigate, either

woman's allegations. Both told similar, consistent stories about sexual assaults that began as

consensual encounters (encounters to which Fairfax admits); there is no indication that they

knew each other or in any way coordinated the disclosure of their allegations; their allegations

had been reported, and in many respects corroborated, by other news organizations months

before the challenged CBS broadcasts; and Fairfax in several public statements told the press that

the women should be treated with respect and that their stories deserved to be heard. *See* Mem.

at 4-5, 13 (citing Kelley Decl. Exs. 28, 37).[7] Further, as the Amended Complaint itself indicates,

CBS *did* investigate the women's allegations. *Id.* at 25-29.

Ultimately, Fairfax's contention that CBS failed to investigate Watson's allegations and

otherwise failed to adhere to "accepted journalistic standards" hinges on a single contention: the

alleged presence of an "eyewitness" during one of the sexual encounters. *See* Am. Compl. ¶¶ 11,

---

[7] In these statements, Fairfax emphasized "how important it is for us to listen to women when
they come forward with allegations of sexual assault or harassment," encouraged "the media, my
supporters and others to treat both the woman who made this allegation and my family with
respect," and that "anyone willing to come forward with allegations of sexual misconduct should
be heard fairly and fully, taken seriously, and treated respectfully." Kelley Decl. Exs. 28, 37.

107, 111-12, 138-39, 145, 148; Opp. at 16-17.  But the Amended Complaint itself establishes that (1) CBS reached out to the sources Fairfax's spokeswoman suggested could contradict Watson's story and, more importantly, (2) Fairfax himself has actively concealed the existence and identity of the "eyewitness" from CBS.  *See* Mem. at 27-28.

At all times since the sexual encounter, Fairfax has presumably known the identity of the "eyewitness," but has consistently and deliberately failed to tell the public or CBS about this person.  *See, e.g.*, Am. Compl. ¶¶ 107, 127, 183.  Most significantly, at all times prior to the challenged broadcasts (and for months thereafter), Fairfax made no public mention, to CBS or anyone else, that such a person even existed.  CBS cannot have failed to investigate something that it had no reason to know and that Fairfax failed to disclose.

In his Opposition, Fairfax comes the closest he has to identifying the supposed eyewitness.  *See* Opp. at 16 (stating, for first time, that "[o]ne of the witnesses [in list of four names given to a CBS reporter in February 2019] was the eyewitness").  Putting aside the fact that this post-litigation disclosure comes more than eight months after Watson first came forward, more than six months after CBS broadcast the Watson interview, and more than four months after Fairfax first asserted the presence of a then-unnamed eyewitness, if the supposed eyewitness was included in the list of four potential sources given to CBS in February, then Fairfax himself has pleaded that CBS not only *did* try to interview the eyewitness, but unsuccessfully enlisted Fairfax's assistance in "urg[ing]" that person to talk.  *See* Am. Compl. ¶ 107.  Fairfax pleads that reporter Ed O'Keefe told Fairfax's spokeswoman that CBS had tried to contact all four sources she named but that none had returned CBS's calls, and he "urg[ed]" her to implore them to do so.  As the Fourth Circuit has held, attempting to contact sources called to the reporter's attention are not the actions "of one acting with reckless disregard for the truth."

*Hugger v. Rutherford Inst.*, 94 F. App'x 162, 167 (4th Cir. 2004).

Fairfax does not contend (nor can he) that any second-hand knowledge the CBS Corporation lawyer may have possessed regarding Watson's allegations can be imputed to the journalists responsible for the interview.  The Supreme Court has made clear that the relevant inquiry is directed to the subjective belief of those responsible for the challenged publication at the time of dissemination.  *N.Y. Times v. Sullivan*, 376 U.S. 254, 286-87 (1964).  The CBS Corporation lawyer, who Fairfax does not (and cannot in good faith) allege played any role in the challenged broadcasts, is at best a potential source who was under no obligation to speak to the reporters.  And, as Fairfax affirmatively pleads, CBS's journalists *did* attempt to speak with him and he (like the putative "eyewitness") rebuffed their efforts, as he had every right to do.

In addition to the several sleights-of-hand identified above, Fairfax's suggestion that there is evidence of actual malice in CBS's purported failure to give him an opportunity to respond to the allegations is equally without foundation.  From the face of the Amended Complaint and the broadcasts themselves, it is established that:

- CBS first requested that Fairfax provide his side of the story in February 2019, nearly two months before the interviews were broadcast, Am. Compl. ¶ 107;

- CBS reporters were in regular contact with and "responsive" to Fairfax's team throughout this period, *id.* ¶ 189;

- CBS reported on Fairfax's public statements regarding the allegations in February 2019, Kelley Decl. Ex. 35;

- CBS, in the reports at issue, included Fairfax's statements in their entirety, including his characterizations of the results of polygraph tests, *id.* Exs. 1-13; and

- CBS repeatedly requested to interview Fairfax regarding the allegations, but he declined every such request, *id*. Ex. 6 at 3.

Simply put, though CBS had no legal duty to do so, Fairfax has affirmatively pleaded that CBS investigated both women's allegations and repeatedly solicited Fairfax's input.  A news outlet's

13

investigation must be considered "as a whole" in determining whether actual malice has been plausibly alleged, keeping in mind that actual malice is a "daunting standard[]." *Tavoulareas*, 817 F.2d at 797; *see also Edwards v. Schwartz*, 378 F. Supp. 3d 468, 500 (W.D. Va. 2019).

### 2. CBS's purported "public relations motive" and "preconceived narrative"

Fairfax alleges, albeit in entirely conclusory fashion, that there is proof of actual malice because CBS decided to broadcast the interviews to rehabilitate its public image *vis a vis* the #MeToo movement and that, as a result, CBS had a "preconceived narrative." *See* Opp. at 20-21; Am. Compl. ¶¶ 8, 10, 119, 121-22, 125, 128, 132, 179, 181 (regarding Tyson); *id.* ¶¶ 108, 119, 121-22, 124-25, 128, 132, 179 (regarding Watson).  These additional allegations do not bolster the plausibility of Fairfax's "actual malice" claim for several reasons.

As CBS explained more fully in its opening Memorandum at 32-35, Fairfax's allegations of an improper motive fail for each of three reasons.  First, a publication's self-serving motive is a dubious basis on which to plead actual malice.  *See Harte-Hanks Cmmc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989); *see also Tavoulareas*, 817 F.2d at 795 ("speech honestly believed, whatever the speaker's motivation, contributes to the free interchange of ideas and the ascertainment of truth," and plaintiffs must instead "show an intent to inflict harm *through falsehood*" (emphasis added) (internal marks and citations omitted)).[8]  Second, Fairfax relies almost entirely on conclusory statements that are not entitled to consideration in the plausibility analysis in any event.  *See Iqbal*, 556 U.S. at 679.  Third, there is an "obvious alternative explanation" for why CBS broadcast these interviews.  *Id.* at 682; *Twombly*, 550 U.S. at 567.  CBS secured interviews with two of the three main subjects of an ongoing public

---

[8] Regarding ill will, Fairfax again misstates the law, citing to a dissent as if it were the majority opinion.  *See* Opp. at 20 (citing *Tavoulareas*, 817 F.2d at 833 (MacKinnon, J., dissenting)).

controversy, both of whom Fairfax publicly encouraged the news media to hear out. CBS is in

the business of reporting news; these accusations against a sitting lieutenant governor are

newsworthy.[9]  As the court in *Tavoulareas* held, even if this Court gives credence to Fairfax's

claim that CBS spoke only to Tyson, Watson and their lawyers (which the Amended Complaint

itself contradicts by recounting CBS's multiple, pre-broadcast interactions with Fairfax's

spokesperson and its reporter's attempts to contact the four sources she suggested), protestations

of "slanted reporting" cannot be evidence of actual malice when the challenged publication itself

includes information provided by the subject of the story and defendants "suppressed no

information that would have proved the article incorrect."  817 F.2d at 797.

### 3.  CBS's post-publication conduct

As a threshold matter, the Supreme Court has expressly recognized that post-publication

conduct is typically irrelevant to a finding of actual malice.  *Sullivan*, 376 U.S. at 286.  The

Court therefore need not consider Fairfax's allegations regarding CBS's alleged actions and

"state of mind" in June, July and August 2019, months after the challenged broadcasts.  *See* Am.

Compl. ¶¶ 126-27, 156-58, 185-91.  Further, contrary to Fairfax's assertion, Opp. at 22 n.1, CBS

is not liable for recirculation later by others of its news reports, because of the "single

publication rule" that applies to mass media publications, including the challenged broadcasts.

*See Semida v. Ride*, 863 F.2d 1156, 1161 & n.2 (4th Cir. 1988).

Fairfax alleges that CBS's failure to retract the interviews is evidence of actual malice.

Opp. at 22-23.  Courts, however, routinely reject this argument for the common-sense reason that

---

[9] What few "facts" Fairfax alleges regarding a preconceived narrative, Opp. at 21, are either
contradicted on the face of the pleadings, speculative, or legally irrelevant.  As CBS established,
"pre-interviews" and editing of stories are standard journalistic practices, Mem. at 33-35, and
CBS did attempt to contact the persons identified by Fairfax, *id.* at 5-6; *see infra* Section II.B.1.

a failure to retract indicates nothing about state of mind at the time of publication. *E.g.*, *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 281-82 (S.D.N.Y. 2013); *Tavoulareas*, 817 F.2d at 793; *McFarlane*, 91 F.3d at 1515; *Pippen*, 734 F.3d at 614; *N.Y. Times Co. v. Connor*, 365 F.2d 567, 577 (5th Cir. 1966).[10]

## III.    THE NEWS REPORTS AND RELATED MATERIALS CBS HAS PLACED IN THE RECORD PROPERLY ARE SUBJECT TO JUDICIAL NOTICE

Fairfax grudgingly concedes that copies and transcripts of three (but not all) of the CBS broadcasts, and a copy of the blog post in which one set of allegations against him first surfaced two months before the CBS broadcasts, are "arguably acceptable" for the Court to consider on this Motion to Dismiss.  Opp. at 26 n.3.  But Fairfax seeks to exclude from the Court's consideration the other exhibits tendered by CBS, *id.* at 24, including:

- copies and transcripts of the other CBS broadcasts at issue, Exs. 7-13, all of which are expressly referenced in his pleading, Am. Compl. ¶¶ 152, 193, 212, 215;

- copies of Fairfax's correspondence regarding the allegations, Exs. 38-39, 42-44, all of which are expressly referenced in his pleading, Am. Compl. ¶¶ 126, 127, 182-85;

- copies of five additional documents expressly referenced in his pleading*, see* Ex. 19 & Am. Compl. ¶¶ 55-58, 66; Ex. 23 & Am. Compl. ¶¶ 61, 80-81, 167-68; Ex. 27 & Am. Compl. ¶¶ 71-72, 172-76; Exs. 29-30 & Am. Compl. ¶¶ 86-89, 92-93, 150;

- copies of five official public statements released or made by Fairfax regarding the allegations at issue, Exs. 22, 26, 28, 33, 37; and

- copies of fifteen news reports on Tyson's and Watson's allegations, Exs. 24, 25, 31, 32, 34-36, 40-41, and the related Northam allegations, Exs. 14-18, 20.

Fairfax opposes consideration of these exhibits despite conceding that a court properly may evaluate "documents attached or incorporated into the complaint," Opp. at 26 (citation omitted)—overlooking the fact that 17 of the 38 exhibits he seeks to exclude are expressly

---

[10] Fairfax concedes that, if the Court grants the Motion to Dismiss on the ground that he failed adequately to plead actual malice, then CBS also is immune from liability for the broadcasts pursuant to Virginia's anti-SLAPP statute, Va. Code § 8.01-223.2.  Opp. at 28.

incorporated into the Amended Complaint by reference, including seven exhibits that are copies of the very news reports he challenges in this action.

Fairfax also concedes that "the Court may, in its discretion consider outside documents that are . . . 'official public records pertinent to the plaintiff's claims,' if the document is 'one of unquestioned authenticity.'" *Id.* (quoting *Corinthian Mortg. Corp. v. ChoicePoint Precision*, No. 1:07cv832 (JCC), 2008 WL 11374386, at *6 (E.D. Va. April 4, 2008)). Yet he overlooks that five of the exhibits are official public statements released or made by Fairfax *himself*, including Exhibit 33, which is an official video recording of his statements at a State Senate session.

Fairfax also acknowledges that another judge in this jurisdiction has held that "a court may take judicial notice of newspaper articles at the motion to dismiss stage when the articles discuss the subject matter of the case." *See* Opp. at 27 (citing *Advanfort Co. v. Int'l Registries, Inc.*, No. 1:15-cv-220, 2015 WL 2238076 (E.D. Va. May 12, 2015)). Yet 15 of the exhibits Fairfax seeks to exclude are news articles providing important context about the Tyson and Watson allegations and the Northam blackface scandal, both of which are extensively discussed in the Amended Complaint.

There is no question that the Court may properly consider the 17 exhibits incorporated into the complaint and Fairfax's five official statements. As to the 15 news reports addressing the Fairfax and Northam controversies, as CBS previously explained, it does not offer these documents for the truth of their contents, but, rather, for the fact that these reports were published. *See* Mem. at 2 n.1. The existence of these published reports – all but two of which were published before CBS aired its interviews with Tyson and Watson – provide the requisite context for the Court's determination as a matter of law whether the broadcasts convey the proffered defamatory meaning and whether, as a matter of law, Fairfax has adequately pleaded

actual malice. This is consistent with precedent. *See Arpaio v. Cottle*, No. 18-cv-02387 (APM), 2019 U.S. Dist. LEXIS 134604, at *12 (D.D.C. Aug. 9, 2019) (dismissing defamation claim for failure to plead actual malice, finding there was nothing to suggest the article's assertions of fact were false, and noting, "[t]o the contrary, as Defendants' briefing details with publicly reported news events and judicial decisions underpinning the Article's claims, of which the court takes judicial notice, there is ample reason to reject Plaintiff's claim that 'Defendants could not possibly have believed' the truthfulness of the Article's assertions of fact." (citations omitted)).[11] Fairfax's request that the Court strike the exhibits, Opp. at 24 n.2, should be denied.

## IV.   FAIRFAX HAS FAILED TO STATE A CLAIM FOR IIED

As CBS has demonstrated, Fairfax's IIED claim fails for three reasons: (1) assuming the Court agrees that his defamation claim fails, the IIED necessarily fails with it; and in any event, he did not plead the requisite degree of either (2) outrageous conduct by CBS or (3) severe harm. Mem. at 38-40. Fairfax concedes the first point, Opp. at 28-29, and if the Court dismisses the defamation claim, it need go no further with respect to the IIED claim.

But even if the Court were to conclude that some portion of the defamation claim may proceed, nowhere in his Opposition does Fairfax identify any *facts* he could plead that would

---

[11] *See also, e.g., Fairbanks v. Roller*, 314 F. Supp. 3d 85, 88 n.1, 93 (D.D.C. 2018) ("On a motion to dismiss for failure to state a claim, a court may take judicial notice of statements made on the internet when a party relies on them not for their truth, but merely to show that those statements were made" and holding that plaintiff had failed to adequately plead actual malice where content of other public statements at relevant time supported, rather than undermined, defendant's belief in truth of statement and thus explained failure to later correct it (citation omitted)); *Condit v. Dunne*, 317 F. Supp. 2d 344, 357 (S.D.N.Y. 2004) ("The Court also takes into consideration the copies of additional news articles that defendant submits 'to place [his] comments in the broader social context.' . . . The Court does not look to the substance of the articles to resolve any disputed issue on defendant's motion, but does consider the fact of the publication of these articles as evidence of the media frenzy, and thus takes judicial notice of the widespread publicity and speculation that focused on" subject (citation omitted)).

plausibly support the two essential elements of an IIED claim at issue.  Because IIED is a

disfavored tort, its requirements are stringent.  *Fuller v. Aliff*, 990 F. Supp. 2d 576, 580 (E.D. Va.

2013).  Extreme and outrageous conduct, therefore, is not just conduct that is tortious or even

criminal, but so awful that it is "atrocious, and utterly intolerable in a civilized community."  *Id.*

(citation omitted).  Publishing an allegedly false and defamatory news report about a public

official – even if it "undermine[s]" his "political career," Opp. at 30 – comes nowhere near

meeting this standard.  *See* Mem. at 39.  Fairfax does not cite any authority to the contrary.

In addition, Fairfax's conclusory pleading that he "suffered severe emotional distress,"

Am. Compl. ¶ 228, is precisely the kind of "threadbare recital" of an element of the claim that

the Supreme Court has firmly rejected.  *Iqbal*, 556 U.S. at 663.  Fairfax's insistence that his

purported emotional distress "comes from" factors such as the supposed invasion of his privacy,

Opp. at 31, says nothing about the *severity* of whatever distress he actually experienced, which is

what he is required to support with well-pleaded facts.  To state a claim, the alleged distress must

be so severe no reasonable person could be expected to endure it, which can be shown by proof

that the distress rendered the plaintiff incapable of carrying out his work or family

responsibilities.  *McCaffrey v. Va. Peninsula Reg'l Jail Auth.*, No. 4:18cv154, 2019 U.S. Dist.

LEXIS 185262, at *26-27 (E.D. Va. Oct. 4, 2019).  As this Court has held, an IIED claim is not

properly pleaded where there is no allegation that the plaintiff suffered any physical harm,

required any medical treatment, or suffered any income loss as a direct result of the purported

distress.  *Zaklit v. Glob. Linguist Sols., LLC*, No. 1:14cv314 (JCC/JFA), 2014 U.S. Dist. LEXIS

92623, at *47-49 (E.D. Va. July 8, 2014) (Trenga, J.).  Even the case on which Fairfax primarily

relies involved more specific allegations than his Amended Complaint contains.  *Fields v. Sprint*

*Corp.*, No. 3:16cv905 (MHL), 2017 U.S. Dist. LEXIS 147654, at *12-13 (E.D. Va. May 11,

19

2017) (plaintiff pleaded "financial harm, embarrassment, depression, anxiety, mental anguish, emotional pain, torment and suffering, shame, fright, mortification, humiliation and loss of dignity and pride").

## V.    CBS CORPORATION IS NOT A PROPER DEFENDANT

CBS Corporation demonstrated that it is not a proper defendant both because Fairfax failed to allege any facts that would support a finding it was responsible for the challenged broadcasts and because he failed to allege any facts that would support a finding of actual malice on its part.  Mem. at 40.  Fairfax asserts, correctly, that CBS Broadcasting Inc., which broadcast the challenged reports, is an indirect, wholly-owned subsidiary of CBS Corporation.  Opp. at 32. But that is precisely why CBS Corporation is *not* a proper defendant.  A party may pierce the corporate veil and hold a parent liable for the acts of its subsidiary only where the subsidiary is an "adjunct, creature, instrumentality, device, stooge, or dummy of" the parent corporation *and* the parent's control was exercised to the plaintiff's detriment.  *Eure v. Norfolk Shipbuilding & Drydock*, 263 Va. 624, 634, 561 S.E.2d 663, 669 (2002) (citation omitted).  The Amended Complaint contains no such allegations, nor could it.  Fairfax's conclusory assertion that CBS Corporation "exercised dominion and control over CBS Broadcasting," Opp. at 32, would be insufficient even if he had alleged it in his pleading.[12]  Given the absence of any allegations on which CBS Corporation could be held liable, it should be dismissed.

## CONCLUSION

CBS respectfully requests that the Court grant this motion and dismiss the action.

---

[12] Fairfax also makes the curious assertion that CBS Corporation is a proper defendant because it employs the in-house attorney whom Fairfax alleges was a mutual friend of both Fairfax and the purported "eyewitness."  Opp. at 32.  The attorney is not a defendant, nor is he alleged to have had any role in the challenged broadcasts.

Dated:  November 29, 2019

Respectfully submitted,

BALLARD SPAHR LLP

By  /s/ Matthew E. Kelley
    Lee Levine (*pro hac vice*)
    Jay Ward Brown, Va. Bar No. 34355
    Matthew E. Kelley, Va. Bar No. 84045
1909 K Street NW, 12th Floor
Washington, DC  20006-1157
Phone: 202-661-2200
Fax: 202-661-2299
levinel@ballardspahr.com
brownjay@ballardspahr.com
kelleym@ballardspahr.com

*Counsel for Defendants CBS Corporation
and CBS Broadcasting Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 29, 2019, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all interested parties.

    */s/ Matthew E. Kelley*
Matthew E. Kelley, Va. Bar No. 84045
Ballard Spahr LLP
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
Phone: 202-661-2200
Fax: 202-661-2299
kelleym@ballardspahr.com

*Counsel for Defendants CBS Corporation*
*and CBS Broadcasting Inc.*